Argued December 18, 1973, reversed February 5, reconsideration denied March 13, petition for review denied April 9, 1974

ETCHISON, *Respondent, v.* STATE ACCIDENT INSURANCE FUND (No. 71-141-L), *Appellant.*

518 P2d 675

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Alan B. Holmes,* Medford, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and TANZER, Judges.

TANZER, J.

This is a workmen's compensation case. Claimant seeks compensation for an injury allegedly suffered while moving a workbench. In a prior opinion, we held that the act of moving the workbench was within the scope of his employment. *Etchison v. SAIF*, 8 Or App 395, 494 P2d 455 (1972). The threshold issue on remand was whether the work-related act was the cause of claimant's back problems.

On remand the hearing officer disallowed the claim. That disallowance was affirmed by the Workmen's Compensation Board. On appeal, the circuit court reversed the order of the Board. It found the injuries to have been caused by the act of moving the workbench and ordered appropriate compensation.

Our review of the record leads us to conclude that claimant has not carried the burden of proof that his back problems are the result of the work-related act. The evidence was carefully analyzed by the hearing officer and we adopt portions of his opinion as our own:

"As the Court of Appeals has pointed out in its opinion, claimant had a previous history of back trouble, and on the day he moved the workbench he did not mention being injured to his employer, although the employer was present, [8 Or App at 400]. The record reflects that in 1960 claimant underwent a lumbar laminectomy following a truck accident. Although the employer was aware claimant was having back problems and going to the doctor in January and February, 1970, he was not advised until about March 2 that claimant was claiming that the back problem was work connected.

"Claimant was receiving medical attention for right lower back complaints a few days before the bench moving incident of January 31, 1970. He was

seen by E. F. Tonn, M.D., on January 16, 1970, with complaints of left elbow pain, a hand sore and numb, and pain in the upper back in the region of the seventh or eighth rib. When seen on January 19, 1970, there was pain in the right lower back, and the right sacroiliac region was manipulated. Dr. Tonn saw claimant again on February 2, 1970, two days after the bench moving incident, and the only additional history was that claimant still had distress. Nothing was mentioned to Dr. Tonn about claimant being hurt in the interval. Claimant returned on February 9, 1970, complaining that his low back was hurting, and manipulation was directed to the fourth and fifth lumbar vertebrae. This sequence of histories and treatment is not corroborative of the occurrence of a low back injury on January 31, 1970.

"It was not until about February 23, 1970, when claimant saw an osteopath, that the low back pain was listed as severe. Two days later, on February 25, claimant reported the pain had decreased but there was still soreness in the low back. After February 25 there was an exacerbation, and on March 2 claimant appeared in obvious pain and distress. His condition thereafter did not improve with physical thereapy [sic], and he was referred to an orthopedic surgeon.

"In early April 1970 claimant was hospitalized for myelography and a lumbar laminectomy at L4-5 on the left. The primary complaint preceding the laminectomy involved radiation of pain into the left leg. In the history given to a neurosurgeon on April 9, 1970, the work incident date is moved up to within 'approximately five weeks ago' although, in fact, the bench was moved nearly ten weeks before April 9. The neurosurgeon's report refers specifically to 'an onset of severe low back pain, left sided' occurring only about three weeks before the April 9 exam (Claimant's Exhibit 2). This would place the onset of classical disc symptoms close to the March 2 visit to the osteopath when claimant

appeared in obvious pain and distress. Again, the medical histories do not lend much support to the contention that the disc problem was materially caused by the bench moving incident of January 31.

"There is testimony in the record, somewhat equivocal, regarding complaints by claimant about his back after chasing his son and wrestling with him in December 1969 or January 1970. About the 10th or 12th of January 1970 claimant moved his household from Grants Pass to Rogue River, and engaged in carrying household goods. Soon after the move to Rogue River he borrowed a chain saw from the employer to cut some wood. After cutting the wood claimant was 'stove up' and could hardly walk.

"The burden of proof rests with the claimant. On consideration of the sequence of medical histories and treatment, as detailed above, the evidence of off-the-job activities close in time to the back complaints, and the background of prior back problems, I find that claimant has not proved that the bench moving incident of January 31, 1970, was of material causal significance to the back condition for which surgery was ultimately performed in April 1970. There was nothing remarkable in the demeanor of claimant and his witnesses to cast doubt on the credibility of the testimony and my conclusion is not based on demeanor evidence.

"IT IS NOW THEREFORE ORDERED that the denial of the claim be and is hereby approved, and the Request for Hearing is dismissed."

Reversed.

LANGTRY, J., dissenting.

In dissenting, I agree with the circuit judge that the claimant carried his burden of proof. The hearing officer's opinion, quoted at length in this court's opinion, did not mention (and consequently quite pos-

sibly the hearing officer did not consider) some facts favorable to the claim:

Dr. Tonn treated claimant on January 16 and 19 and February 2 and 9, 1970. The accident occurred on January 31. Dr. Tonn testified, "the first two visits * * * had reference more to the left elbow and the hand" and upper back. The last two in February were more to the right sacroiliac. He also stated that the January 16 and 19 treatments included manipulation of the upper back and neck, the January 19 and February 2 treatments included manipulation of the right sacral and the February 9 treatment included manipulation of the 4th and 5th lumbar vertebrae. The latter is where the injury was claimed. Thereafter, all treatments concentrated on that area. Claimant testified he felt a "catch" in his back when he was moving the bench, the next day he felt pain and the next day, without an appointment (which he had had for previous visits), he went to the doctor. In explanation of not telling Dr. Tonn of the accident he said, "he [Dr. Tonn] told me what was troubling me." Dr. Tonn did not use x-ray for diagnosis. Claimant's mother testified his serious troubles in the back dated from the time of the accident.

Dr. Tonn's testimony does not lead me to conclude that he contradicted claimant's contentions. He was the only doctor who testified, and was cross-examined.

The circuit judge concluded that the injury was at least a result of aggravation of a back condition in the accident and was consequently compensable. With this I agree. Thus, in this eighth de novo hearing on this claim, the closeness of the result is demonstrated by a two-to-one decision.